Douglas v. Coca-Cola                    CV-94-097-M    11/06/95
              UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Pamela Douglas,
      Plaintiff,

      v.                                      Civil No. 94-97-M

Coca-Cola Bottling Company of
Northern New England, Inc. and Richard Neal,
      Defendants.


                ORDER ON MOTIONS FOR SUMMARY JUDGMENT

      Plaintiff, Pamela Douglas, has filed a claim pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e as

amended by the Civil Rights Act of 1991 ("Title VII"), whereby

she seeks damages for unlawful sexual harassment while employed

by defendant, Coca-Cola Bottling Company of Northern New England

("CCNE").  In her four-count complaint,[1] Douglas alleges that

defendant Richard Neal was her supervisor at CCNE and that he

sexually harassed her.  Counts I and II plead causes of action

against CCNE for violations of Title VII.  Count III pleads a

state law claim for wrongful discharge against defendants.  Count

IV pleads a state law claim for intentional infliction of

_____

      [1] Count V of Douglas' complaint was dismissed pursuant to
Fed. R. Civ. P. 12(b)(6).  Douglas v. Coca-Cola Bottling Co., No.
C-94-97-M (D.N.H. filed Nov. 6, 1995).  In addition, Counts I and
II were dismissed as to defendant Neal and are now asserted
against defendant CCNE alone.  Id.

emotional distress against Neal.  Defendants now move for summary judgment, Fed. R. Civ. P. 56, on all counts.

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).  The party opposing the motion, plaintiff in this case, must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition."  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).  This burden is discharged only if the cited disagreement relates to a genuine issue of material fact.  Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993).  A fact is "material" if it might affect the outcome of the litigation, and an issue is "genuine" if a reasonable jury

could, on the basis of the proffered proof, return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248. In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." <u>Id.</u> at 255.

## II.  FACTUAL BACKGROUND

Consistent with the applicable standard of review, the facts are recounted in the light most favorable to Douglas, the non-moving party. Douglas was initially hired as an administrative assistant for CCNE at its Salem, New Hampshire plant on January 16, 1989. Shortly thereafter, she was transferred to its Londonderry plant. Initially, Douglas' supervisor was Ed Bryant. In January 1990, Mr. Bryant was replaced as plant manager by defendant Richard Neal. At that time, Douglas began reporting directly to Neal.

Douglas' job performance was satisfactory as evidenced by an October 1991 evaluation which rated her performance as very good in most categories. She received a significant salary increase in conjunction with her positive performance evaluation. Beginning in late 1990, defendant Neal made sexually suggestive statements, massaged Douglas' shoulders, hit her on the buttocks,

3

and pretended to touch her breasts on several occasions while they were at work. Douglas responded to these sexual advances by telling Neal to "knock it off," or by ignoring his behavior.

In early October 1991, Neal accompanied Douglas to lunch in Londonderry, New Hampshire. On their way to lunch, Neal made a sexually suggestive comment which Douglas ignored. During lunch, Neal told Douglas that he would like to have an affair with her. Douglas immediately changed the subject and from that point tried to keep their relationship professional. As a consequence of Douglas' rebuff, Neal began criticizing her work. On December 27, 1991, Neal called Douglas into his office where he verbally berated her and criticized her job performance and attitude. Douglas was not given an opportunity to defend herself, but was, instead, told to "sit down and shut up." She left in tears. On December 30, 1991, Douglas gave Neal a letter which addressed his concerns and requested a meeting to discuss her return to work. At their December 31, 1991, meeting, Neal fired Douglas.

## III. DISCUSSION

In their motion, defendants raise, in relation to each count, several grounds upon which summary judgment should be granted. For the sake of simplicity, each count will be

4

addressed in the order it is presented in Douglas' complaint. As to each count, I find that there exist genuine issues of material fact which preclude granting summary judgment.

### A.    Count I - Title VII Quid Pro Quo

In Count I of her complaint, Douglas asserts a claim for quid pro quo harassment under Title VII. In order to maintain a quid pro quo claim, a plaintiff must satisfy each prong of a five-part test. The plaintiff must prove that:

> (1) the plaintiff employee is a member of a protected group; (2) the sexual advances were unwelcome; (3) the harassment was sexually motivated; (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment; and (5) respondeat superior liability has been established.

Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783-84 (1st Cir. 1990). CCNE maintains that Douglas has not demonstrated the existence of a genuine issue of material fact as to parts two, four, and five of the Chamberlin test and that, as a result, CCNE is entitled to judgment as a matter of law on Count I.

#### 1.    Unwelcomeness

CCNE first argues that Douglas has not shown Neal's sexual advances to be unwelcome. Chamberlin makes clear that the unwelcome nature of a defendant's sexual advances may be

5

demonstrated either by plaintiff's affirmative resistance to the advances or by his or her consistent failure to respond to them. Chamberlin, 915 F.2d at 784. Here, Douglas has set forth facts illustrating both active and passive resistance.

When Neal hit Douglas on the buttocks and rubbed her shoulders, she told him to "knock it off." (Douglas Dep. at 90, 94, 106.) When Neal made a sexually suggestive comment to Douglas, she promptly walked away. (Douglas Dep. at 194.) And when Neal voiced his desire to have an affair with Douglas, she immediately changed the subject of conversation. (Douglas Dep. at 198-99.) Viewed in a light most favorable to Douglas, the record demonstrates a genuine dispute as to a material fact, that is whether Neal's advances were unwelcome.

## 2. Affecting Tangible Aspect of Employment

CCNE next claims that Douglas has not produced any evidence in support of the fourth prong of the Chamberlin test — that Neal's advances affected a tangible aspect of her employment. Specifically, CCNE maintains that Douglas has demonstrated no causal nexus between Neal's advances and her discharge or constructive discharge.

The record contains allegations of sexual misconduct on the part of Neal over a period of at least six months. (Douglas Dep.

6

at 88-139, 193-94.)  Two and one half months after Douglas declined Neal's invitation to have an affair, and after Douglas received a significant pay increase and positive job evaluation, Neal terminated her, either actually or constructively.  (Douglas Dep. at 133-34, 172.)  Viewed in a light most favorable to Douglas, the record does raise a genuine issue of material fact as to the causal nexus between Douglas' refusal of Neal's advances and her termination.  See Chamberlin, 915 F.2d at 785 n.10 (finding that two and one half month interval between last sexual advance and discharge did not preclude finding of causal nexus).

### 3.    Respondeat Superior Liability

Finally, as to Count I, CCNE claims that Douglas has failed to establish CCNE's liability for Neal's actions, stating that Neal had no authority to discipline or discharge Douglas.  In assessing employer liability for employee actions under Title VII, courts apply common law principles of agency.  Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 72 (1986).  Employer liability will lie where a supervisor uses his actual or apparent authority to harass an employee or if he was aided in accomplishing the harassment by the existence of his agency

7

relationship with the employer.  <u>Karibian v. Columbia Univ.</u>, 14 F.3d 773, 780 (2d Cir.), <u>cert. denied</u>, 114 S. Ct. 2693 (1994).

Viewed in the light most favorable to Douglas, the evidence before the court demonstrates the existence of a genuine issue of material fact as to whether Neal, in carrying out his harassment, relied on his actual or apparent authority over Douglas in the workplace.[2] (Douglas Dep. at 88-141, 144; Neal Dep. at 69-70.) Because Douglas has demonstrated the existence of genuine issues of material fact as to prongs two, four, and five of the <u>Chamberlin</u> test, CCNE's motion for summary judgment on Count I is denied.

## B.    Count II - Title VII Hostile Work Environment

In Count II of her complaint, Douglas claims that Neal's pattern of sexual harassment created a hostile working environment at CCNE in violation of Title VII.  A working environment is deemed "hostile" under Title VII when "the workplace is permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter

---

[2] This finding of the existence of a genuine issue of material fact as to CCNE's liability for Neal's alleged quid pro quo discrimination applies with equal force to CCNE's liability for the hostile work environment alleged in Count II.

the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 114 S. Ct. 367, 370 (1993) (citations and internal quotations omitted). The work environment must be both objectively and subjectively hostile. Id.

Douglas has detailed, in her deposition, multiple instances of alleged harassment over a period lasting at least six months. (Douglas Dep. at 88-141, 193-99.) In addition, she has described her extreme discomfort in the face of Neal's advances. (Douglas Dep. at 110, 196, 198.) Her proffer is sufficient to raise genuine issues of material fact as to whether the work environment at CCNE was both objectively and subjectively hostile.

In a similar vein, CCNE claims that Douglas has not presented evidence of a continuing series of Title VII violations sufficient to prevent a claim relating to the earliest instances of alleged harassment from being time barred. In order for a plaintiff to recover for harassing acts that occurred outside the limitations period, he or she must show a "substantial relationship" between those acts and an act of harassment that occurred within the limitations period. Sabree v. United Bhd. of Carpenters and Joiners, 921 F.2d 396, 401 (1st Cir. 1990). The

9

facts in the record support the notion that all of Neal's allegedly discriminatory acts emanated from the "same discriminatory animus," id. at 400, and that Douglas was "unable to appreciate that [she was] being discriminated against until [she had] lived through a series of acts." Id. at 402. Accordingly, CCNE's motion for summary judgment on Count II is denied.

## C.     Count III - Wrongful Discharge

In Count III, Douglas brings a state common law cause of action for wrongful discharge against defendants. In order to maintain a suit for wrongful discharge under New Hampshire law, a plaintiff must show two things. First, plaintiff's termination must have been motivated by bad faith or malice. Cloutier v. Great Atl. and Pac. Tea Co., 121 N.H. 915, 920 (1981). Second, plaintiff must have been terminated for performing an act that public policy would encourage or refusing to perform an act that public policy would condemn. Id. Defendants move for summary judgment on Count III, claiming that Douglas has not shown that she was fired in violation of public policy.

In Chamberlin v. 101 Realty, Inc., 626 F. Supp. 865 (D.N.H. 1985), this court stated that "public policy would condemn the

10

acceptance of sexual harassment by an employee as a means of retaining employment." Id. at 867. As noted above, the facts viewed in the light most favorable to Douglas demonstrate the existence of a genuine issue of material fact as to whether she was discharged for refusing Neal's sexual advances. Therefore, defendants' motion for summary judgment on Count III is denied.

**D.   Count IV - Intentional Infliction of Emotional Distress**

In Count IV, Douglas asserts a state law claim for intentional infliction of emotional distress against Neal. New Hampshire has adopted the definition of the tort of intentional infliction of emotional distress from the Restatement (Second) of Torts § 46 (1965), which states, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Morancy v. Morancy, 134 N.H. 493, 495-96 (1991) (quoting Restatement (Second) of Torts § 46 (1965)). Neal claims that Douglas has presented no evidence that would allow a reasonable jury to find that his conduct was outrageous or that Douglas' emotional distress was severe.

11

## 1. Extreme and Outrageous Conduct

In defining extreme and outrageous conduct, the Restatement warns that "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46 cmt. d (1965). Rather, the conduct must be "utterly intolerable in a civilized community." Id. However, "conduct may be characterized as extreme and outrageous in part due to the alleged tortfeasor's abuse of a position of actual or apparent authority over the injured party." Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1190 (D.N.H. 1992) (internal quotations omitted); Restatement (Second) of Torts § 46 cmt. e (1965).

In light of these standards, this court has twice allowed to go forward claims for intentional infliction of emotional distress based on sexual harassment in the workplace. In Chamberlin v. 101 Realty, Inc., 626 F. Supp. 865 (D.N.H. 1985), plaintiff's evidence that the defendant, her supervisor, held her hand and repeatedly made sexually suggestive comments to her was found sufficient to survive a motion for summary judgment. Id. at 869; Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 779-81 (1st Cir. 1990). And in Godfrey, 794 F. Supp. at 1183, 1190, plaintiff's claims that defendants stared at her, made sexually

12

suggestive comments to her, and stood near her in a sexually suggestive manner were sufficient to survive a motion to dismiss.

Because Douglas has produced evidence of a pattern of harassment by Neal lasting at least six months, as well as evidence that Neal was her superior at CCNE, it cannot be said that no reasonable jury could find Neal's actions to be extreme and outrageous. Therefore, a genuine issue of material fact exists, precluding summary judgment.

### 2. Severe Emotional Distress

In defining severe emotional distress, the Restatement notes, "The law intervenes only where the distress inflicted is so severe that no reasonable [woman] could be expected to endure it." Restatement (Second) of Torts § 46 cmt. j (1965). Douglas has proffered evidence that, due to Neal's harassment, she suffered severe anguish, significant hair loss, weight loss, and sleep loss. (Douglas Dep. at 10-16.) In addition, she regularly cried and became nauseous for months following her discharge. Douglas also suffered from "migraine" headaches immediately after she was terminated. (Douglas Dep. at 10-24.) The source of her anxiety, she testified, was not her discharge, as such, but Neal's harassing behavior. (Douglas Dep. at 10-30.) This testimony, viewed in the light most favorable to Douglas, creates

13

a genuine issue of material fact as to whether she suffered severe emotional distress; for if she actually suffered the distress described, it could be found by a jury to be "severe" as that term is used by the Restatement. Therefore, Neal's motion for summary judgment on Count IV is denied.

## IV. CONCLUSION

For the reasons stated above, there exist genuine issues of material fact sufficient to preclude summary judgment in favor of the defendants on Counts I, II, III, and IV. Accordingly, defendants' motion for summary judgment (document no. 30) is denied.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

November 6, 1995

cc:  Kathleen C. Peahl, Esq.
     Robert E. Jauron, Esq.
     Peter Bennett, Esq.